UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. 5:22-CV-4057 |
| v. | )<br>) |
| QUAD COUNTY CORN PROCESSORS COOPERATIVE, | )<br>)<br>)<br>)<br>) |
| Defendant. | )<br>)<br>) |

# COMPLAINT

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action against Quad County Corn Processors ("QUAD" or "Defendant") for violations of Section 211(*o*) of the Clean Air Act, 42 U.S.C. § 7545(*o*), and the regulations issued thereunder at 40 C.F.R. Part 80, Subpart M.

2. The United States seeks civil penalties and injunctive relief pursuant to Sections 205 and 211 of the Clean Air Act ("the Act"), as amended, 42 U.S.C. §§ 7524 and 7545.

## AUTHORITY, JURISDICTION, AND VENUE

3. Authority to bring this action on behalf of the United States is vested in the United States Department of Justice by, *inter alia*, Section 305 of the Act, 42 U.S.C. § 7605, and 28 U.S.C. § 516.

4. This Court has jurisdiction over the subject matter of this action pursuant to Sections 205 and 211 of the Act, 42 U.S.C. §§ 7524 and 7545, and 28 U.S.C. §§ 1331, 1345, and 1355.

5. Venue in this district is proper pursuant to Section 205(b) of the Act, 42 U.S.C. § 7524(b), because Defendant committed the alleged violations in this district.

## THE PARTIES

6. Plaintiff United States of America is acting on behalf of the United States Environmental Protection Agency.

7. Defendant QUAD is an agricultural cooperative located at 6059 159th Street, in Galva, Iowa, 51020. Defendant QUAD's primary business function is to process corn to produce ethanol for use as a biofuel.

8. Defendants is a "person" as defined in Section 302(e) of the Act, 42 U.S.C. § 7602(e).

## THE CLEAN AIR ACT AND THE RENEWABLE FUEL PROGRAM

9. The Energy Policy Act of 2005 amended the Clean Air Act to add a renewable fuel program, which required EPA to promulgate regulations to increase the amount of renewable fuels used in motor vehicles to 7.5 billion gallons by 2012. *See* Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. 594, 1069 (codified at Section 211(*o*) of the Act, 42 U.S.C. § 7545(*o*)). The Energy Policy Act also required EPA to establish a credit trading program to

help effectuate the renewable fuel mandate. *See* Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. at 1071 (codified at Section 211(*o*) of the Act, 42 U.S.C. § 7545(*o*)(5)). EPA implemented the Energy Policy Act by promulgating renewable fuel standards (now known as "RFS1") at 40 C.F.R. Part 80, Subpart K.

10. The Energy Independence and Security Act of 2007 amended Section 211(*o*) of the Clean Air Act to increase the renewable fuel mandate to 36 billion gallons by 2022 and establish four separate categories of renewable fuels, each with a separate volume mandate and each with a specific lifecycle greenhouse gas emission threshold. *See* Energy Independence and Security Act of 2007, Pub. L. No. 110-140, 121 Stat. 1492, 1521-24 (codified at 42 U.S.C. § 7545(*o*)(2)). The Energy Independence and Security Act also authorized EPA to allow credits to be generated for nonroad fuel, home heating oil, and jet fuel, in addition to motor vehicle fuel. *See* Energy Independence and Security Act of 2007, Pub. L. No. 110-140, 121 Stat. at 1526 (codified at 42 U.S.C. § 7545(*o*)(5)). Congress expanded the renewable fuel program to reduce the nation's dependence on foreign oil, increase the production of renewable fuels, and achieve significant greenhouse gas emissions reductions. *See* Energy Independence and Security Act of 2007, Pub. L. No. 110-140, 121 Stat. 1492. EPA promulgated additional renewable fuel standards (known as "RFS2") at 40 C.F.R. Part 80, Subpart M to implement the new requirements.

11. The RFS2 regulations define "renewable fuel" as a fuel that is 1) produced from renewable biomass, 2) used to replace or reduce the quantity of fossil fuel present in a transportation fuel, heating oil, or jet fuel, and 3) has lifecycle greenhouse gas emissions at least 20 percent less than baseline lifecycle greenhouse gas emissions, subject to some exceptions. *See* 40 C.F.R. § 80.1401 (definition of "renewable fuel").

12. The RFS2 regulations define "transportation fuel" as "fuel for use in motor vehicles, motor vehicle engines, nonroad vehicles, or nonroad engines (except fuel for use in ocean-going vessels)." *See* 40 C.F.R. § 80.1401 (definition of "transportation fuel").

13. The RFS2 regulations require gasoline and diesel refiners and importers (known as "obligated parties") to meet Renewable Volume Obligations ("RVOs"), which are annual renewable fuel obligations based upon a percentage of the gasoline and diesel fuel that the obligated party produces or imports into the United States. *See* 40 C.F.R. §§ 80.1406(b), 80.1407. Renewable fuel exporters are also required to meet an RVO based on the volume of renewable fuel that the exporter exports out of the United States. *See* 40 C.F.R. § 80.1430.

14. The RFS2 regulations allow obligated parties to comply with their RVOs by producing renewable fuel themselves or by participating in a trading program. Renewable fuel production is tracked by Renewable Identification Numbers ("RINs") that are generated by renewable fuel producers and importers to represent a volume of renewable fuel. Obligated parties must demonstrate that they have retired a sufficient number of RINs (whether they produced the renewable fuel associated with the RINs themselves or whether the RINs were obtained from another entity) to meet their RVOs. *See* 40 C.F.R. § 80.1427(a)(1).

15. The RFS2 regulations define a "RIN" as "a unique number generated to represent a volume of renewable fuel pursuant to §§ 80.1425 and 80.1426." *See* 40 C.F.R. § 80.1401 (definition of "renewable identification number").

16. The RFS2 regulations establish requirements for the production and importation of renewable fuels and the generation and assignment of RINs, including the following:

- 40 C.F.R. § 80.1426(f)(1) and 40 C.F.R. § 80.1426, Table 1 identify permissible fuel types, feedstocks, and production process "pathways" that renewable fuel

4

- 40 C.F.R. § 80.1426(a)(1) allows renewable fuel producers and importers to generate RINs if the fuel "qualifies for a D code pursuant to § 80.1426(f), or the EPA has approved a petition for use of a D code pursuant to § 80.1416."

- 40 C.F.R. § 80.1460(a) provides that "no person shall produce or import a renewable fuel without complying with the requirements of § 80.1426 regarding the generation and assignment of RINs."

17. The RFS2 regulations establish four separate categories of renewable fuels: cellulosic biofuel, biomass-based diesel, advanced biofuel, and general renewable fuel. *See* 40 C.F.R. § 80.1405. Each category of renewable fuel is required to meet certain minimum greenhouse gas reduction standards, among other requirements. *See* 40 C.F.R. § 80.1401 (definition of "renewable fuel").

18. The RFS2 program's four renewable fuel standards are nested within each other, such that fuel with a higher greenhouse gas reduction standard can be used to meet the standards for a lower greenhouse gas reduction standard. *See* 40 C.F.R. § 80.1427.

19. The RFS2 regulations designate each category of renewable fuel by a separate D code. 40 C.F.R. § 80.1425(g).

20. The RFS2 regulations define cellulosic biofuel as renewable fuel derived from any cellulose, hemi-cellulose, or lignin that has lifecycle greenhouse gas emissions that are at least 60 percent less than the baseline lifecycle greenhouse gas emissions. *See* 40 C.F.R. § 80.1401 (definition of "cellulosic biofuel").

21. Cellulosic biofuel has a D code value of 3. 40 C.F.R. § 80.1425(g)(1).

producers must use if they intend to generate RINs for the fuel, and the D codes associated with those pathways.

22. General renewable fuel has a D code value of 6. 40 C.F.R. § 80.1425(g)(4).

23. 40 C.F.R. § 80.1403 provides an exemption to the renewable fuel requirement that the fuel have lifecycle greenhouse gas emissions that are at least 20 percent less than baseline lifecycle greenhouse gas emissions where the facility producing the renewable fuel commenced construction on or before December 19, 2007, among other requirements. *See* 40 C.F.R. § 80.1403(c).

24. 40 C.F.R. § 80.1426(f)(3)(vi) requires accurate accounting of RINs for fuel produced by simultaneous processing of two or more different feedstocks, and provides equations for apportioning RINs and for calculating feedstock energy using the converted fraction.

25. The equations at 40 C.F.R. § 80.1426(f)(3)(vi) are necessary to determine the correct number of D3 (cellulosic) and D6 (non-cellulosic) RINs to apportion to the fuel produced.

26. The RFS2 regulations require renewable fuel producers to register with EPA before engaging in any transaction involving RINs. 40 C.F.R. § 80.1450. Registration requirements include, *inter alia*, identifying the location of the facility where renewable fuel will be produced, listing the feedstocks the facility is capable of utilizing, and describing the facility's renewable fuel production processes. *See* 40 C.F.R. § 80.1450(b)(1)(i)–(ii).

27. The RFS2 regulations define "facility" as "all of the activities and equipment associated with the production of renewable fuel starting from the point of delivery of feedstock material to the point of final storage of the end product, which are located on one property, and are under the control of the same person (or persons under common control)." *See* 40 C.F.R. § 80.1401 (definition of "facility").

28. Renewable fuel producers are required to submit certain information regarding each batch of renewable fuel they produce for which they generate RINs to EPA via EMTS. This information includes the name of the producer, the producer's EPA registration number, the producer's EPA facility registration number, the volume and category of fuel produced, the quantity of RINs generated for the batch, the D code of RINs generated for the batch, the type and quantity of feedstock(s) used for the batch, and the production process used for the batch. 40 C.F.R. § 80.1452(b) (2011).

29. Entities that sell, separate, or retire RFS2 RINs must submit information about the transaction to EPA via EMTS, including the submitting party's name and EPA registration number, the D code of the RINs, the quantity of RINs involved in the transaction, the transaction type, and the trading partner's name and EPA registration (where applicable). 40 C.F.R. § 80.1452(c).

30. A RIN that is improperly generated is invalid. *See* 40 C.F.R. § 80.1431(a)(1)(ix).

31. The RFS2 regulations prohibit a person from creating or transferring an invalid RIN. *See* 40 C.F.R. § 80.1460(b)(2).

32. The RFS2 regulations prohibit a person from introducing into commerce a renewable fuel that is produced from a feedstock or through a process that is not described in the person's registration information. *See* 40 C.F.R. § 80.1460(b)(5).

33. The RFS2 regulations provide that an obligated party cannot meet its RVO with invalid RINs. *See* 40 C.F.R. § 80.1460(c)(1).

34. The RFS2 regulations provide that no person shall fail to meet any requirement of the regulations that applies to that person. *See* 40 C.F.R. § 80.1460(f).

35. The RFS2 regulations require renewable fuel producers to maintain records related to the generation and assignment of RINs, including the batch volume in gallons, batch number, and the date of production associated with all RINs generated. *See* 40 C.F.R. § 80.1454.

36. The RFS2 regulations apply to renewable fuel produced on or after July 1, 2010; to all RINs generated on or after July 1, 2010; and to all RVOs and compliance periods starting with January 1, 2010. *See* 40 C.F.R. § 80.1400.

## GENERAL ALLEGATIONS

37. The average market price for D3 RINs in 2015 was approximately $0.64 per RIN.

38. The average market price for D6 RINs in 2015 was approximately $0.44 per RIN.

39. At all times relevant to this Complaint, QUAD was registered with EPA as a renewable fuel producer.

40. QUAD's EPA registration identifies its Galva, Iowa facility as the facility where it produces non-cellulosic renewable fuel (and generates RINs for that production) using corn as a feedstock.

41. In 2013, QUAD's EPA registration was updated to include the production of cellulosic renewable fuel after QUAD installed process equipment that pumped whole stillage from the beer column into its proprietary production process, where corn kernel fiber is converted to cellulosic ethanol.

## FIRST CAUSE OF ACTION

**Production of Renewable Fuel from a Process Not Described in Registration Statement in Violation of 40 C.F.R. § 80.1460(b)(5)**

42. The preceding Paragraphs are realleged and incorporated herein by reference.

43. From May 26, 2015, through October 12, 2015, QUAD produced renewable fuel using process equipment that introduced starch from the non-cellulosic process into the cellulosic

8

fermenter, a process that was not described in its registration statement in violation of 40 C.F.R. § 80.1460(b)(5).

44. Pursuant to Sections 205 and 211 of the Act, 42 U.S.C. §§ 7524 and 7545, and 40 C.F.R. §§ 19.4, 80.1461(a)(1), and 80.1463(a), QUAD is liable for civil penalties of up to $51,796 per day for each violation of the RFS2 regulations, plus the economic benefit or savings resulting from each violation, and for injunctive relief.

### SECOND CAUSE OF ACTION

### Failure To Submit Information Required by 40 C.F.R. § 80.1451(b)(1)(iii)(U)

45. The preceding Paragraphs are realleged and incorporated herein by reference.

46. From May 26, 2015 through October 12, 2015, QUAD failed to submit to EPA chemical analysis and data related to the simultaneous feedstock conversion process that introduced starch from the non-cellulosic process into the cellulosic fermenter, as required by 40 C.F.R. § 80.1451(b)(1)(iii)(U).

47. QUAD's failure to submit the information required by 40 C.F.R. § 80.1451(b)(1)(iii)(U) violated 40 C.F.R. § 80.1460(b)(1).

48. Pursuant to Sections 205 and 211 of the Act, 42 U.S.C. §§ 7524 and 7545, and 40 C.F.R. §§ 19.4, 80.1461(a)(1), and 80.1463(a), QUAD is liable for civil penalties of up to $51,796 per day for each violation of the RFS2 regulations, plus the economic benefit or savings resulting from each violation, and for injunctive relief.

### THIRD CAUSE OF ACTION

### QUAD Created Invalid RINs
### Violation of 40 C.F.R. § 80.1460(b)(2)

49. The preceding Paragraphs are realleged and incorporated herein.

50. From May 26, 2015, through October 12, 2015, QUAD used process equipment that introduced starch from the non-cellulosic process into the cellulosic fermenter, creating a simultaneous feedstock conversion process without applying the equations required by 40 C.F.R. § 80.1426(f)(3)(vi), resulting in the assignment of an incorrect D code for the RINs it generated.

51. RINs assigned an incorrect D code pursuant to 40 C.F.R. § 80.1426(f)(3)(vi) were invalid pursuant to 40 C.F.R. § 80.1431(a)(1)(vii).

52. QUAD violated 40 C.F.R. § 80.1460(b)(2) each time it created an invalid RIN.

53. Pursuant to Sections 205 and 211 of the Act, 42 U.S.C. §§ 7524 and 7545, and 40 C.F.R. §§ 19.4 80.1461(a)(1), and 80.1463(a), QUAD is liable for civil penalties of up to $51,796 per day for each violation of the RFS2 regulations, plus the economic benefit or savings resulting from each violation, and for injunctive relief.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, United States of America, respectfully requests that this Court:

A. Enter an order declaring that the improperly generated RINs that QUAD created in 2015 are invalid;

B. Enter a judgment that QUAD is liable to the United States for civil penalties pursuant to Section 211(d) of the Act, 42 U.S.C. § 7545(d), of not more than $51,796 for every day of such violation and the amount of economic benefit or savings resulting from the violation; and

C.  Grant the United States such other relief as the Court deems just and proper.

Respectfully Submitted,

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

JAMES D. FREEMAN
Senior Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
Phone: (303) 844-1489
Email: james.freeman2@usdoj.gov

TIMOTHY T. DUAX
United States Attorney
Northern District of Iowa

MATTHEW J. COLE
Assistant United States Attorney
Northern District of Iowa

OF COUNSEL

MATTHEW KRYMAN
Attorney-Advisor
U.S. Environmental Protection Agency
Office of Enforcement & Compliance Assurance
Air Enforcement Division
Western Field Office (8MSU)
1595 Wynkoop Street
Denver, Colorado 80202